The U.S. case filed for oral argument is People v. Ford. The U.S. case filed for oral argument is People v. Reinhardt. complaining witness in this case, A.B., testified that she had vaginal sex with Mr. Ford in March of 2008. And this was with the participation of a young man named Mollett, who was her boyfriend at the time. But the pastor of Mr. Ford's church said the church records show that it was after that, it was in April of 2008, that she first attended the church. And her testimony was this all happened while she was attending the church. Which again, if she was attending the church, it does lend itself to the argument that Mr. Ford was acting with authority because he was a youth minister, youth leader, or something like that. Now, personally, I don't think that that amounts to a position of authority, but that's my opinion. But the young lady involved here certainly had some problems with her memory. She told one thing to the initial officer. She told another thing when she was interviewed at the Abuse Crisis Center. And then she told something else before trial, told something else before trial, at trial. She changed her story a number of times. Her friend, Myra Brady, a 48-year-old woman who she called Aunt Myra, had a fling with Mr. Ford. And we believe that she was a woman scorned. There was a young woman named Catrice Mark who worked at the Pizza Hut with the defendant. And we don't believe that her testimony was particularly worthy of belief either. So what it comes down to is Mr. Ford defended against these charges on certain dates and had his minister come in and testify. There was another child from there who said that Kyle Hott, who said that AB started there in the spring of 08. So these are things that could have happened after March of 08. And for the state then, at the close of evidence, to be able to bring it up to March of 08, if they had done that before trial, we would have had a chance maybe to bring in witnesses about that particular case. Thank you, Your Honors.  Counsel? Justice Goldman-Hirsch, may it please the court, counsel, my name is Timothy James King, and I do represent the people of the state of Illinois. Your Honors, in my time before you, I will show you why the defendant's conviction for sexual assault should be upheld by this honorable court. Now, at the forefront, I want to go ahead and address some of the things that Mr. Burkett stated. The state does, in fact, concede issue one in the initial brief, which deals with the reimbursement without a love hearing. We do concede that issue. We also concede the addendum issue, the $100 analysis lab fee, because that is only for drugs, as you can find pursuant to Statute 730 ILSCS 5-5-9-1.4b. Now, to briefly address some of the questions from this court, Justice Waxman, you had asked whether or not the DNA analysis fee has actually been addressed by the Supreme Court. It has not. As of current date right now, we have a complete district split, with this district being the only one that has not filed a published opinion on its particular opinion regarding whether the DNA analysis fee is actually a fee or a fine. The state has urged this court to adopt first district's rationale that the plain language of the statute by stating it is a fee indicates it is, in fact, a fee. A fine would be a clear mandate from the legislature that it's anything that can be applied to pre-incarceration credit. But as we stand now, when a statute purports to be something by clear language, the legislature presumably understood what the difference between a fee and a fine was as it pertains to the credit for pre-incarceration. So what was confusing to the second, third, and fourth? The second, third, and fourth stated that there was an instance where the DNA analysis fee is done afterwards, after the crime has been committed. So technically, it's not necessarily given for credit or monetary value towards the prosecution or the defense or the prosecution. And so because of that, the second, third, and fourth district stated that since it doesn't actually go to the prosecutorial monetary value, therefore, it's actually a fine that is incumbent after a conviction is sustained because the Illinois State Police then collects DNA evidence and then puts it into its database. Because of that, they state that in actuality or in essence, it's a fine. But again, we do not get to the analysis of whether it's a fine or fee when the actual language of the statute. Remember, the threshold issue in statutory construction before we get to any interpretation of legislative intent is clear, the plain language of the statute. And when the statute states specifically it is a DNA analysis fee and it was recently amended as of 2010 and again made no clear reference that it was in fact a fine. With the first district's understanding and also 2010, which states again and reiterates numerous prior decisions that DNA analysis fee is not subject to pre-incarceration credit, we urge this court to adopt the first district's rationale. That being stated, Justice Goldenkirch, you had asked the question whether or not the trial court particularly or directly stated to the defendant whether there was a three-year-to-life MSR. It did. You can find this within the record on pages 640 to 648. It's during the sentencing hearing when the trial court is actually allotting what the particular terms and rights of the defendant were. What particular MSR did he give? Three years to life, he said. Oh, he gave the three years to life. The trial court addressed that the defendant would be eligible for MSR up to life. It didn't specifically say there's a fixed length, but it did address that the defendant would have MSR that would be later. So he basically gave the range. Absolutely. He gave the range. But as far as directing the defendant as far as what his MSR would be, the trial court did specifically note that. Again, you can find in the sentencing hearing, particularly on pages 640 to 648 of the record. That being stated, the defendant argues of the numerous issues raised in this brief, the one that the defendant seems to argue the most on is issue 5 in the supplemental brief, which states whether or not there was a fatal variance in the charging issue. Your Honors, first some threshold rules of law. Number one, the trial court's decision to allow an amendment to the charging instrument will not be disturbed absent abuse of discretion. You'll find that in various cases, Olson being one of them. Now, this court has specifically noted, and I quote, aside from no review at all, the abuse of discretion standard is the most deferential standard of review. You'll find that on Keeble v. Beam. Now, here we have an instance where the defendant claims prejudice because of the amendment to the charging instrument after the conclusion of the state's evidence. However, the thorough examination of the record shows that the defendant had no prejudice at all. He suffered no prejudice because the defendant argues his original charges for counts 3 through 12 allege that he committed criminal sexual assault from the days of June 2006 to May 2007. You can find that on pages 92 through 101 of the common law record. Now, to close the evidence, the defendant's trial, the trial court allowed the state to amend these charges 3, 2, and 3, 12 with dates ranging from October 2006 to April 2008. You can find this on the common law record on page 358 to 367 and also on the record as far as the transcript on page 489 to 504. Now, the defendant was well aware of the range of these dates prior to the prosecution amending those charges. And I would point this court specifically to the language from the trial court. This is from the state's attorney. He states, I will note that count 1 of the amended indictment does cover the timeframe, the entire timeframe from August 1, 2006 to August 1, 2008. So the defendant has been put on notice since the onset of the filing of this case in August of last year that the state's focus is going to be on that timeframe, that broader timeframe. It is also true that the discovery that the defendant has had has instances and occurrences that go all the way through 2008. And so we don't think the charges that are occurring here now in amending this have any substantial prejudicial effect to this defendant. You can find them on 494 and 495 of the record. The trial courts explicitly agreed with the state's argument and stated, and I quote, count 1 does allege August 1 of 2006 to August 1 of 2008. I mean the time period. The discovery does cover that time period on page 497 of the record. Again, the trial court urges and explicitly notes that, and I quote, the timeframe alleged in count 1 was that within the timeframe that was allowed and alleged in count 1 and that that discovery was supplied as 2 on page 503 of the record. Consequently, the defendant was put on notice well before the conclusion of the state's evidence. They had known this for about a year prior to. Now, granted, it was in count 1, not in counts 3 through 12, but I would point this court to the specific rules of law that you can find in various cases. People v. Johnson, which is cited in our brief as just one, which states, and I quote, the well-established rule in Illinois is that in testing the sufficiency of a multi-count indictment, elements missing from one count may be supplied by another count. What is that case? That is People v. Johnson, Your Honor, and you can also find that in People v. Morris. You can also find that in People v. Hall. Those are all well-established cases that give clear indications of law that multi-count indictments, other elements that are lacking in some may be supplied by other counts in the indictment. But here there's an argument that that element wasn't even needed, whether or not the date was needed. Here the defendant did not state that he didn't commit the offenses on particular dates. Rather, the defendant's testimony that he didn't commit those offenses at all, that they never happened. And because he did not admit or testify that they didn't happen at specific dates, then I would point this court specifically to the ruling in Wheeler. In People v. Wheeler, which is a Third District case, there the indictment against the defendant alleged sexual assaults occurred on or about January 14, 1989. However, the evidence presented at the trial showed that those sexual assaults could have occurred either in 1987 or 1989, thus a two-year difference. Then the defendant argued that the variation of that two-year difference in the dates presented him substantial prejudice at the trial. But the Wheeler court specifically disagreed and stated, and I quote, it is clear that the essence of the defendant's defense was that he never sexually abused the complainant, not merely that he could have abused her in January of 1989. Consequently, the Wheeler stated that there was no substantial prejudice. When the defendant tries or attempts to frame his innocence in his testimony that it never happened, then certainly the dates in that particular indictment do not matter. They are not an essential element of the sexual assault indictment. I would point this court again to another case, People v. Sanders, which states specifically the date is not an essential ingredient of the crime you bring. However, even if it is an essential ingredient to this particular type of sexual assault where there is an element, added element of authority and a position of authority… … I would still point this court to the fact of the well-established precedent in Illinois that states that when there is a multi-count indictment and the defendant is aware of the dates in those multi-count indictments… … he is put on notice that anything within that range of date is fair game. Here the defendant knew about that into discovery, not at the close of evidence. For instance, the defendant – may I finish? Yeah, go ahead. So for the defendant to assert that he was prejudiced or substantially prejudiced by the variance simply is not supported by either the case law or the record. I thank you for your time and your consideration. Thank you, counsel. Counsel? We'll give you an extra minute if you need it. I'm rebuttal. I don't, Your Honor. Okay. I just wanted to point out we're not complaining about the gap in time. We're complaining about that we brought in evidence, we brought in witnesses to testify these particular times cannot happen. In cross-examination, I believe Mr. Mollett was asked when he dated A.B. And this is sometime in the spring of 2008. It's not that we're saying we didn't do it. We're saying we didn't do it this date, we didn't do it this date, we didn't do it this date. And there's evidence to support some of those particular dates. So you're saying the defendant admitted he had a relationship with the victim? Just one friendship, Your Honor. Oh, okay. But you said he didn't do it. He didn't have sex with her. I thought you said he said he didn't do it on those dates. That's correct. He brought in witnesses and through cross-examination to say on this particular day I was in Peoria. That sort of thing. And then the other thing, Your Honor, I believe that I can file a very short supplemental brief on the MSR issue within seven calendar days. Fine. And then I was wondering if the court would let us know when the state should respond. Seven would be good for you? Seven is fine, Your Honor. Okay. If he denies it, then my decision is contrary. Fine. Thank you, Your Honor. Thank you, counsel. We appreciate the briefs and arguments. We'll take the case under advisory.